Bruce E. GONZALES, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 02S00–8802–CR–245.

Supreme Court of Indiana.

Jan. 18, 1989.

Barrie C. Tremper, Chief Public Defender, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Bruce E. Gonzales was convicted by jury of rape, a class A felony, and of criminal confinement, a class D felony. The trial court sentenced him to concurrent sentences of forty (40) years on the rape conviction and four (4) years on the criminal

confinement conviction. He directly appeals challenging solely the sufficiency of the evidence to support his convictions.

The evidence most favorable to the verdict reveals that 17 year old D.R. was walking home on the evening of September 18, 1986. She heard a male voice ask her name. She did not answer and began to walk faster. An individual she later identified as Gonzales grabbed her from behind by her hair and pulled her to the ground. He then pulled her to her feet and told her she was going with him. D.R. told Gonzales she had to go home. He replied she would go home when he felt like taking her home. She went with him because she was scared. Gonzales took D.R. to a train station in Fort Wayne, Indiana. Gonzales led D.R. by the arm to a pavilion. He pulled her pants down to her knees and pulled her shoes off. He pulled his sweat pants half way down, and inserted his penis into her vagina. Gonzales then thought he heard something and backed away. D.R. attempted to run away but the rocks on her bare feet made it easy for Gonzales to catch her. He caught her by the hair, pulled her, and slapped her. He told her he would kill her if she tried it again.

Gonzales then took D.R. to a place by the railroad tracks where there was a hole underneath the tracks. There was a ladder in the hole for access. Gonzales ordered D.R. down the ladder into the hole. Once they were in the hole, Gonzales took off D.R.'s clothes. D.R. testified she and Gonzales had sexual intercourse. When D.R. asked whether she could go home, Gonzales became angry and told her there were enough rocks in the hole that he could just bash her head in, and nobody would notice down there. Gonzales then again had sexual intercourse with D.R. When he stopped, they put their clothes back on and went up the ladder. D.R. noticed the 11:00 p.m. train was arriving at the station. Gonzales then took D.R. with him to various locations and eventually took her back to his house. He took her to the garage, and ordered her to lay on a bed and take her clothes off. When she refused, he threatened her with a crowbar. She told him he might as well kill her, because she

would not let him do that to her again. He told her to quit crying before he gave her something to cry about and then he slapped her. Gonzales then put a ladder to the side of the house under his room. He made D.R. go up first, so she could not escape. When inside his room, Gonzales made her lie on the bed with him and he then fell asleep. D.R. escaped out the window. She went to the hospital and talked to the police. She picked Gonzales from a photo album showed to her by the police.

Gonzales claims the evidence was insufficient to establish the threat or use of deadly force necessary to upgrade the crime charged from a class B felony to a class A felony. He asserts the record does not indicate he threatened to use deadly force prior to the first act of sexual intercourse which occurred near the railroad tracks. He states threats were made only to prevent D.R.'s attempts to escape and were not made to force D.R. to engage in sexual intercourse with him.

Gonzales' argument here is untenable. Gonzales grabbed D.R.'s arm and led her to the railroad tracks. He attempted sexual intercourse, but he thought he heard something. D.R. then tried to escape, but Gonzales caught her. He grabbed her by her hair, slapped her, and threatened to kill her if she tried it again. He then ordered her into the hole where he took her clothes off and raped her. After she repeatedly told him she wanted to go home, he told her he could bash her head in with a rock, and nobody would notice. He then continued to have sexual intercourse with her. He also threatened her with a crowbar while they were in the garage. This evidence is sufficient to support the finding that Gonzales threatened the use of deadly force. *See Zollatz v. State* (1980), 274 Ind. 550, 412 N.E.2d 1200.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.